# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ESPERANZA VARGAS VOGEL and MONICO RODRIGUEZ, as Trustee of the Esperanza Vargas Special Needs Trust,<br><br>Defendants.<br>_____/ | Case No. 1:21-cv-00762-ADA-SKO<br><br>**FINDINGS AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED**<br><br>(Doc. 46)<br><br>**OBJECTIONS DUE: 21 DAYS**<br><br>**ORDER GRANTING MOTION FOR LEAVE TO DEPOSIT FUNDS INTO THE REGISTRY OF THE COURT AND VACATING HEARING**<br><br>(Doc. 45) |

## I. INTRODUCTION

On August 24, 2022, Plaintiff American General Life Insurance Company ("Plaintiff") filed a motion for leave to deposit funds into the registry of the Court pursuant to Fed. R. Civ. P. 67 (Doc. 45) and a motion for default judgment against Defendants Esperanza Vargas Vogel ("Defendant Vogel") and Monico Rodriguez ("Defendant Rodriguez"), as Trustee of the Esperanza Vargas Special Needs Trust (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 55(b)(2) (Doc. 46). No opposition to either motion has been filed. (*See* Docket.)

For the reasons set forth below, the undersigned recommends that the motion for default judgment be granted, and the Court grants the motion for leave to deposit funds.[1]  The hearing on the motions, set for September 28, 2022, is vacated.  *See* E.D. Cal. L.R. 230(g).

## II.    FACTUAL BACKGROUND[2]

On May 12, 2021, Plaintiff filed this diversity action seeking a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, of the proper direction of payments due under an annuity contract.  (Doc. 1 (Compl.).)  Plaintiff filed an amended complaint on May 26, 2022, to interplead, pursuant to Federal Rule of Civil Procedure 22, Defendants' competing claims to the annuity payments.  (Doc. 28 (Am. Compl.).)  According to the operative complaint, Plaintiff issued Annuity No. 404138 effective October 1, 2000, under which Defendant Vogel (formerly known as "Esperanza Rodriguez-Vargas") is the annuitant and measuring life (the "Annuity").  (Am. Compl. ¶¶ 7–8.)  The Annuity was issued in accordance with a Release in Full of All Claims and Rights (the "Settlement Agreement") and Order Approving Petition for Leave to Compromise Claim of Minor ("Approval Order") entered in *Antonia Rodriguez, et al., v. County of Stanislaus, et al.,* Case No. 148369, in the Superior Court of the State of California, Stanislaus County (the "Underlying Action").  (*Id*.  *See also* Doc. 28-3.)

In accordance with the Settlement Agreement and Approval Order, the Annuity directs certain guaranteed payments to be made as follows (the "Annuity Payments"):

- monthly payments of $300.00 each, commencing November 1, 2000, through and including April 1, 2014;

- semi-annual payments of $12,500.00 each, commencing July 1, 2014, through and including January 1, 2019;

- monthly payments of $1,000.00 each, commencing July 1, 2014, through and

---

[1] The motion for default is referred to the undersigned by E.D. Cal. Local Rule 302(c)(19) for the entry of findings and recommendations.  *See* 28 U.S.C. § 636(b)(1)(B).  The motion for leave to deposit funds into the registry of the Court is to be resolved by the undersigned by way of order, pursuant to Local Rule 150(a).

[2] Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied.").  Accordingly, the factual background is based on the allegations of the complaint.

including June 1, 2019;

- one lump sum payment of $50,000.00 due on April 11, 2021;
- one lump sum payment of $75,000.00 due on April 11, 2026;
- one lump sum payment of $150,000.00 due on April 11, 2031;
- one lump sum payment of $275,000.00 due on April 11, 2036;
- one lump sum payment of $500,000.00 due on April 11, 2041; and
- one lump sum payment of $868,825.00 due on April 11, 2046.

(Am. Compl. ¶ 9; Doc. 28-1 at 3; Doc. 28-2 at 3, 8; Doc. 28-3 at 3.)

The Settlement Agreement was executed by Defendant Rodriguez, the maternal grandfather of Defendant Vogel, as "Guardian ad Litem of Plaintiff Esperanza Rodriguez." (Am. Compl. ¶ 12.) The Settlement Agreement does not define the Annuity's payee. (*Id*.) According to the assignment executed by the defendants in the Underlying Action, through which they assigned their obligation to make future payments in settlement of Defendant Vogel's claim in that Action, Defendant Vogel (listed as "Esperanza Rodriguez-Vargas") is the "claimant" of these payments, which are to be made "for" her. (Am. Compl. ¶ 11; Doc. 28-1 at 1.)

In moving for court approval of the settlement in the Underlying Action, Defendant Rodriguez filed a petition requesting that the court approve a special needs trust that would allow Defendant Vogel to continue to receive federal and state benefits. (Am. Compl. ¶ 13.) The Trust Agreement and Special Needs Trust (the "Trust") submitted to the court in the Underlying Action provides that (1) Defendant Rodriguez shall serve as trustee and (2) that "[t]he trust corpus shall consist of a structured annuity, and [ ] the right, during the lifetime of [Defendant Vogel] to receive the periodic payments . . . to be held in irrevocable trust for the special needs of [Defendant Vogel]." (*Id*.) The Trust further provides for termination in the event of Defendant Vogel's death or early termination by court order. (*Id*.)

In or around 2019, Defendant Vogel alleged that Defendant Rodriguez, as trustee of the Trust, had "engaged in misconduct and mismanagement of trust assets." (Am. Compl. ¶ 16.) According to Plaintiff, Defendant Vogel "considered the Trust terminated but, despite request, was not able to procure or provide a copy of an order terminating the Trust." (*Id*.)

3

In April 2021, Defendant Vogel informed Plaintiff that the Trust "remains in effect but that [Defendant] Vogel desires to terminate it." (Am. Compl. ¶ 17.) To date, Plaintiff has not received confirmation that the Trust has been terminated or that judicial action has been taken with respect to Defendant Vogel's assertions of trustee misconduct. (*Id.* ¶ 18.) Plaintiff placed a hold on the Annuity Payments effective as of the April 11, 2021, payment. (*Id.* ¶ 19.)

Plaintiff seeks an order requiring Defendants to interplead and litigate their competing claims and respective rights to the held and remaining Annuity Payments to avoid "multiple liability, multiple litigation, or unnecessary suits and costs." (Am. Compl. ¶¶ 28–30; *id.* at p. 8 ("Prayer for Relief").) As set forth in the amended complaint, Plaintiff is legally obligated under the terms of the Annuity to remit each payment, as it becomes due, to the proper payee; however, Plaintiff is unable to determine the proper direction and/or payee of the Annuity Payments. (Am. Compl. ¶ 21.)

### III. PROCEDURAL BACKGROUND

Defendant Rodriguez was served on June 30, 2022 (Doc. 38), and Defendant Vogel was served on July 14, 2022 (Doc. 39). Neither Defendant has filed an answer nor taken any action indicating that they intend to defend this suit.

Plaintiff requested entry of default against Defendants on August 9, 2022 (Doc. 40), which was entered by the Clerk of Court that same day (Doc. 41). Plaintiff filed the present motion for default judgment on August 24, 2022, requesting entry of a default judgment order (1) awarding attorney's fees and costs in the amount of $8,641.46 to be deducted from the Annuity Payments; (2) enjoining Defendants from instituting or prosecuting further any proceeding in any State or United States court, including this Court, against Plaintiff or its affiliates and agents arising out of or relating to the Annuity or the Annuity Payments; (3) discharging from Plaintiff and its related entities from any further liability arising out of or relating to the Annuity or Annuity Payments; and (4) dismissing with prejudice "[a]ny and all claims, demands, debts, or causes of action arising out of or relating to the Annuity or Annuity Payments that could have been asserted herein against [Plaintiff] by Defendants." (Doc. 46-1 at 11.) Also pending is Plaintiff's separate motion, filed that same day, for an order granting Plaintiff "leave to deposit into the registry of the Court the held Annuity

4

Payment in the amount of $50,000.00 — minus $8,641.46 for attorney's fees and costs — and each remaining Annuity Payment, as it becomes due under the schedule set forth in the Annuity, until further order of this Court." (Doc. 45-1 at 6–7.)

## IV.   DISCUSSION

**A.   Motion for Default Judgment**

   **1.   Legal Standard**

A court may enter judgment against parties whose default has been taken pursuant to Rule 55(b).  *See PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); *Kloepping v. Fireman's Fund*, No. C 94–2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996).  Once a party's default has been entered, the factual allegations in the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party.  *See* Fed. R. Civ. P. 8(b)(6); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating the general rule that "upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"); *see also DirectTV v. Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  The court must still "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2688, at 63 (1998) (footnote omitted); *see also Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir.1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default"); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1272 (N.D.Cal.2004) ("[Although] the factual allegations of [the] complaint together with other competent evidence submitted by the moving party are normally taken as true . . . this Court must still review the facts to insure that the Plaintiffs have properly stated claims for relief").

If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the "amount and character" of the relief that should be awarded.  *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2688, at 63).

5

### a. Procedural Requirements

Before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirements for default judgments set forth in Rules 54(c) and 55 of the Federal Rules of Civil Procedure. Rule 54(c) states that "judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed. R. Civ. P. 54(c). Rule 55(a) provides that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

### b. Substantive Requirements

Granting or denying default judgment is within the court's sound discretion. *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Among the factors that may be considered by the court are (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits (together, the "*Eitel* factors"). *Id.* at 1471–72

On an application for a default judgment, the factual allegations in the complaint are taken as true, with the exception of those regarding damages. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

///

**2.    Analysis**

    **a.    Procedural Requirements**

Plaintiff has satisfied the procedural requirements for a default judgment against Defendants. The operative complaint requested several forms of relief, including injunctive relief, attorney's fees and costs, and "such other and further relief as the Court deems just, equitable, and proper." (Am. Compl. at p. 8 ("Prayer for Relief"). The motion for default judgment seeks the same relief, in satisfaction of Rule 54(c). (*See* Doc. 46-1 at 11.)

Plaintiff also submitted a declaration in satisfaction of Rule 55. (*See* Doc. 40-1.) The declaration states that Defendants are not minors, incompetent persons, or currently serving in the United States military, and that they did not file an answer or take any action that indicated that they intend to defend this suit during the relevant time period. (*Id.* ¶¶ 9–12.) Finally, although service is not required by Fed. R. Civ. P. 55(b)(2), Plaintiff served courtesy copies of the notice of motion and related papers on Defendants via U.S. mail. (*See* Doc. 46 at 2.)

    **b.    Substantive Requirements**

Consideration of the *Eitel* factors shows that all factors either weigh in favor of a default judgment against Defendants or are neutral. The undersigned finds that Plaintiff has met the substantive requirements for entry of default judgment against Defendants.

        i.    <u>Possibility of Prejudice to Plaintiff</u>

Under the first *Eitel* factor, a court examines whether a plaintiff will experience prejudice if the court does not grant default judgment. *Eitel*, 782 F.2d at 1472. Here, Plaintiff would be prejudiced absent a default judgment because it "would be denied the certainty and finality that judgment in an interpleader is intended to provide." *Sun Life Assur. Co. of Canada v. Kimble*, No. CIV S-06-2041 EFB, 2007 WL 3313448, at *2 (E.D. Cal. Nov. 6, 2007). This is sufficient to show Plaintiff would suffer prejudice because it would be denied the benefits of the interpleader process and would be without recourse for relief. *See Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000) ("Interpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation."). Accordingly, the first *Eitel* factor favors granting default judgment.

        ii.   <u>Merits of Substantive Claims and Sufficiency of Complaint</u>

The second and third *Eitel* factors consider the substantive merit of the plaintiff's claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. Taken together, they require that a plaintiff "state a claim on which [it] may recover." *PepsiCo*, 238 F.Supp.2d at 1175.

Plaintiff has admitted its contractual liability as to the Annuity, and there are competing adverse claims to the Annuity Payments between both Defendants. Am. Compl. ¶¶ 8, 9, 15, 16–18, 20, 21. This fulfills the requirements for interpleader under Rule 22 of the Federal Rules of Civil Procedure. *See Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (explaining that "the requirements for [either] rule or statutory interpleader action have been met [where] there is a single fund at issue and . . . there are adverse claimants to that fund") (internal citations omitted). Accepting its allegations as true, Plaintiff has established that it is entitled to the relief sought against Defendants. Accordingly, the second and third *Eitel* factors weigh in favor of granting the motion for default judgment.

        iii.   <u>Sum of Money at Stake</u>

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "In interpleader actions, the sum of money at stake, however significant, is not dispositive as the interpleading party is not asserting an interest in the interpleaded funds, nor are they seeking damages." *Transamerica Life Ins. Co. v. Estate of Ward*, No. 11–cv–0433 JAM, 2011 WL 5241257, at *4 (E.D. Cal. Oct.31, 2011). *See also Am. Gen. Life Ins. Co. v. Durbin*, No. CV 15-4137, 2016 WL 3583826, at *4 (C.D. Cal. June 10, 2016) ("This factor is neutral in an interpleader action since . . . [the] plaintiff-in-interpleader, is not seeking damages."). Accordingly, this factor is neutral.

        iv.   <u>Possibility of Disputed Material Facts</u>

The fifth *Eitel* factor considers the possibility of a dispute as to material facts. *Eitel*, 782 F.2d at 1471–72. Defendants have made no effort to challenge Plaintiff's interpleader complaint. Therefore, there is nothing on the record before the Court to suggest that a factual dispute exists. *See Transamerica Life Ins. Co.*, 2011 WL 5241257 at *4 (finding that "there is a very low likelihood that any genuine issue of material fact exists" because "the court [assumes] the truth of well-pleaded

8

facts in the complaint following the clerk's entry of default"); *see also W. Rsrv. Life Assur. Co. of Ohio v. Canul*, No. 1:11-CV-01751 AWI, 2012 WL 844589, at *3 (E.D. Cal. Mar. 12, 2012) ("[T]here is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendant has not made any effort to challenge the Complaint or otherwise appear in this case."). Accordingly, this factor weighs in favor of granting the motion.

### v.   Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether the default was due to excusable neglect. *Eitel*, 782 F.2d at 1472. The possibility of excusable neglect is remote when the defendant has been properly served or is aware of the lawsuit. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).

Here, the record indicates that Defendants were properly served with a copy of the amended complaint and a summons pursuant to Federal Rule of Civil Procedure 4, which allows service by leaving a copy of the summons and of the complaint at the individual's "dwelling or usual place of abode with someone of suitable age and discretion who resides there," Fed. R. Civ. P. 4(e)(2)(B). (*See* Docs. 38 & 39.) Therefore, it is unlikely that Defendants' failure to answer, and the resulting defaults entered by the Clerk of Court, were the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

### vi.   Policy of Deciding Cases on the Merits

The final *Eitel* factor recognizes that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Where a defendant fails to answer the complaint, however, a decision on the merits is "impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Defendants have failed to respond to Plaintiff's amended complaint. Accordingly, this factor does not weigh against default judgment.

### vii.   Conclusion as to the *Eitel* Factors

In sum, the undersigned finds that the Eitel factors weigh in favor of the entry of default judgment against Defendants.

///

### c. **Nature of the Relief Sought**

#### i. Injunctive Relief

Plaintiff seeks an order enjoining Defendants from "instituting or prosecuting further any proceeding in any State or United States court, including this Court, either at law or in equity, against [Plaintiff] or its affiliates and agents arising out of or relating to the Annuity or Annuity Payments." (*See* Doc. 46-1 at 11.) The Court finds that such an injunction is appropriate in this case.

"Generally, an interpleader action brought pursuant to Rule 22 does not authorize courts to enjoin litigants from future claims in state or federal court with regard to the res at issue." *Am. Gen. Life Ins. Co. v. Maurer*, No. 17-00187-BRO, 2017 WL 7803793, at *10 (C.D. Cal. July 14, 2017). However, district courts have used the All Writs Act, 28 U.S.C. § 1651, to enjoin defendants in an interpleader action from bringing future proceedings regarding the same claim. *Id*.

A party seeking an injunction against relitigation must prove that it would otherwise suffer irreparable harm. *Trustees of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118, 1145 (N.D. Cal. 2009) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959)). The Court will generally grant such injunction "where there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already adjudicated in federal court." *Id*. (citation omitted).

Here, Plaintiff would suffer irreparable harm if faced with future claims to the interpleaded funds. Plaintiff is a disinterested stakeholder with no interests in the funds and relitigation would defeat the purpose of this interpleader action. An injunction here is necessary to prevent judicial wastefulness and the "possibility of inconsistent results." *Peters*, 660 F. Supp. 2d at 1145. Thus, the undersigned finds that Defendants should be enjoined from bringing any further action in state or federal court regarding the Annuity or the Annuity Payments.

#### ii. Attorney's Fees and Costs

Plaintiff requests an award of attorney's fees and costs in the amount of $8,641.46 as compensation for bringing this interpleader action. "[C]ourts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action." *Abex Corp. v. Ski's Enterprises, Inc*., 748 F.2d 513, 516 (9th Cir. 1984). "[T]he proper rule [] in an action in the nature of interpleader, is that

the plaintiff should be awarded attorney fees for the services of his attorneys in interpleading." *Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962). "[B]ecause the attorneys' fees are paid from the interpleaded fund itself, there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Id*.

As discussed above, the undersigned is satisfied that Plaintiff has demonstrated the merits of its interpleader claim and should recover the attorney's fees and costs associated with its interpleader action. In an interpleader action, a court has broad discretion not only with respect to whether to allow attorney's fees to be deducted from the policy, but also with respect to the amount of fees to which an interpleader plaintiff is entitled. *See Trustees of Directors Guild of America Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000).

The interpleader plaintiff is supposed to be disinterested in the ultimate disposition of the fund. As such, attorney's fee awards are properly limited to those fees that are incurred in filing the action and pursuing plaintiff's release from liability, not in litigating the merits of the adverse claimants' positions. *Id*. at 426–27. Examples of these compensable expenses include preparing the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing it from the action. *Id*. (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1719 & n.20 (1986)). Because the scope of compensable expenses is limited, attorney's fee awards to the disinterested interpleader plaintiff are typically modest. This furthers the "important policy interest" in seeing that the fee award does not unduly deplete the fund of those entitled to it. *Id*. at 427.

Here, Plaintiff has requested $7,762.50 in attorney's fees. Plaintiff hired the law firm of McDowell Hetherington LLP to represent it in this interpleader action. Emily Felix, Esq., declares that she and other firm attorneys spent 21.1 hours in bringing this action, which included drafting the complaint in interpleader, motions for judgment in interpleader and entry of default judgment, and locating and serving the claimants. (Doc. 46-2, Declaration of Emily K. Felix ("Felix Decl.") ¶ 3 and Ex. A.) The Ninth Circuit has found that these expenses are compensable. *Tise*, 234 F.3d at 426 (compensable expenses include "preparing the complaint, obtaining service of process on the

claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing it from action."). Regarding the requested hourly rates of $360 to $435 per hour (*see* Doc. 46-2, Felix Dec. ¶ 3 and Ex. A), the Court finds that they are in line with rates recently found reasonable in the Eastern District of California, Fresno Division. *See Martinez v. Ford Motor Co.*, No. 1:18-cv-01607-NONE-JLT, 2021 WL 3129601, at *7 (E.D. Cal. July 23, 2021) (approving hourly rates of $275 to $500). Moreover, Plaintiff's fee amount is comparable to what other courts in this Circuit has approved in interpleader cases. *See Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens & Assocs.*, LLC, No. cv-099152-SVW (MANx), 2010 WL 11597568, at *5 (C.D. Cal. June 10, 2010) (concluding on examination of several cases that "[a]bsent special circumstances, fee awards to the disinterested stakeholder generally fall below $10,000").

Plaintiff also seeks an award of its costs in filing this action. (*See* Doc. 46-2, Felix Decl. ¶ 7 and Ex. B.) Plaintiff asserts the costs incurred totaled $878.96, which represents the filing fee ($402) and the cost of servicing the summons and complaint on Defendants ($476.96). (*Id*.) The costs of a complaint in interpleader may be taxed to the defaulting defendants. *See* OM Fin. Life Ins. Co. v. Ferrari, No. CIV S-11-0728 JAM, 2011 WL 4899751, at *2 (E.D. Cal. Oct. 13, 2011).

Accordingly, the Court recommends Plaintiff's request for attorney's fees and costs be granted.

### iii.   Discharge and Dismissal

Once the court determines that interpleader is proper, it may discharge a disinterested stakeholder from further liability. *See Transamerica Life Ins. Co. v. Shubin*, No. 1:11-CV-01958-LJO, 2012 WL 2839704, at *6 (E.D. Cal. July 10, 2012); *OM Fin. Life Ins. Co. v. Helton*, No. CIV. 2:09-1989 WBS E, 2010 WL 3825655, at *3 (E.D. Cal. Sept. 28, 2010). Here, this interpleader action is proper because Plaintiff has a good faith belief Defendants have competing adverse claims to the Annuity Payments between both Defendants, which may expose Plaintiff to double or multiple liability. *See* Fed. R. Civ. P. 22(a)(1); *Pruco Life Ins. Co. v. Tan*, No. 19-CV-00335-JCS, 2020 WL 2574662, at *4 (N.D. Cal. May 4, 2020). Discharging Plaintiff from further liability and the dismissal with prejudice of any claims asserted or that could have been asserted relating to the Annuity or Annuity Payments is therefore appropriate. *See New York Life Ins. Co. v. Dial*, No. 2:19-

CV-801-KJM-EFB, 2021 WL 720644, at *1 (E.D. Cal. Feb. 24, 2021) (dismissing with prejudice "any and all claims raised or *that could have been raised*" against the interpleader plaintiff "relating to" the subject funds) (emphasis added).

**B.     Motion for Leave to Deposit Funds**

Plaintiff moves the Court, pursuant to Federal Rule of Civil Procedure 67, for leave to deposit into the registry of the Court "the held and remaining Annuity Payments into the registry of the Court as they become due under the schedule set forth in the Annuity until further order of the Court." (Doc. 45-1 at 4.)

### 1.     Legal Standard

Federal Rule of Civil Procedure 67(a) provides, in pertinent part:

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it.

Rule 67 relieves a party of the responsibility for disputed funds, until the Court determines how the funds should be divided. *Qwest Corp. v. City of Portland*, 204 F.R.D. 468, 470 (D. Or. 2001). *Accord Alstom Caribe, Inc. v. Geo. P. Reintjes Co.*, 484 F.3d 106, 113 (1st Cir. 2007) ("The core purpose of Rule 67 is to relieve a party who holds a contested fund from responsibility for disbursement of that fund amount those claiming some entitlement thereto.")).

Whether Rule 67 relief should be available is a matter within the discretion of the court. *United States Fire Ins. Co. v. Icicle Seafoods, Inc.*, No. 2:20-CV-401-RSM-DWC, 2020 WL 5526686, at *2 (W.D. Wash. Sept. 15, 2020) (citing *Cajun Elec. Power Coop. v. Riley Stoker Corp.*, 901 F.2d 441, 445 (5th Cir. 1990)).  "In deciding whether to exercise their discretion, federal courts have looked to whether the amount sought to be deposited was definite; whether the funds could be deposited all at once or whether there would be repeated deposits that would impose an undue burden on the clerk of court; and whether the party seeking leave to deposit the funds had demonstrated a likelihood of success on the merits." *Icicle Seafoods, Inc.*, 2020 WL 5526686, at *2 (quoting *Kansas City S. Ry. Co. v. Borrowman*, No. 09-3094, 2009 WL 3188305, at *4 (C.D. Ill. Sept. 30, 2009)).

**2. Analysis**

Considering the factors identified in *Icicle Seafoods*, the Court finds that the motion for leave to deposit funds should be granted. First, the Annuity Payments to be deposited are finite. Second, the undersigned is satisfied that, although the Annuity Payments are to be made on a schedule and not all at once, there will be no undue burden on the Clerk because the Payments are to be made every five years (and the dispute over the Payments might be resolved before the next payment is due). *Cf. Bank of New York Mellon as Tr. for Certificateholders of CWALT, Inc., Alternative Loan Tr. 2007-12T1, Mortg. Pass-Through Certificates, Series 2007-12T1 v. Meister Park Homeowners Ass'n*, No. 2:16-cv-01969-GMN-GWF, 2021 WL 796138, at *2 (D. Nev. Mar. 2, 2021) (denying leave to deposit ***monthly*** rental payments because they will "be deposited on numerous occasions" and burden the court clerk). Finally, the undersigned has found that Plaintiff has demonstrated a likelihood of success on the merits, for the reasons previously set forth. *See* Section IV.A.2.b.ii, *supra*.

### V.    ORDER AND RECOMMENDATION

The hearing on the motions, set for September 28, 2022, is VACATED. *See* E.D. Cal. L.R. 230(g).

In view of the foregoing, IT IS HEREBY ORDERED that Plaintiff American General Life Insurance Company's motion for leave to deposit funds into the registry of the Court (Doc. 45) is GRANTED. The undersigned shall enter an order for deposit of registry funds following adjudication of Plaintiff's request for attorney's fees and costs, which is on recommendation to the assigned district judge (see below).

Further, IT IS HEREBY RECOMMENDED that:

1. Plaintiff American General Life Insurance Company's motion for default judgment (Doc. 46) be granted;

2. Defendants Esperanza Vargas Vogel and Monico Rodriguez, as Trustee of the Esperanza Vargas Special Needs Trust (collectively, "Defendants"), be enjoined and restrained from instituting or prosecuting further any proceeding in any State or United States court, including this Court, either at law or in equity, against Plaintiff or its

affiliates and agents arising out of or relating to Annuity No. 404138 (the "Annuity") or the held or remaining payments due under the Annuity (the "Annuity Payments");

3. Plaintiff and its past, present, and future parents, subsidiaries, affiliates, successors, assignees, agents, producers, servants, employees, officers, directors, principals, representatives, attorneys, and insurers be fully and finally discharged from any further liability arising out of or relating to the Annuity or Annuity Payments;

4. Plaintiff be awarded its attorney's fees and costs in the amount of $8,641.46, which are to be deducted from the currently held Annuity Payments prior to deposit into the registry of the Court;

5. All claims, demands, debts, or causes of action that could have been asserted against Plaintiff by Defendants arising out of or relating to the Annuity or Annuity Payments be dismissed with prejudice; and

6. Plaintiff be dismissed with prejudice from this action.

These findings and recommendation are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **September 15, 2022**            /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE

15